DECISION AND JUDGMENT
{¶ 1} This accelerated case is before the court on appeal from the judgment of the Erie County Court of Common Pleas, Juvenile Division, which granted the motion of appellee, Charles B. ("father"), to change the surname of his son, Carson ("the child"). Appellant, Jennifer S. ("mother"), appeals the decision of the juvenile court and raises the following sole assignment of error: *Page 2 
 {¶ 2} "It was contrary to law and against the weight of the evidence for the trial court to change the last name of the parties' child to that of the father."
 {¶ 3} Father filed a complaint for paternity on October 3, 2006, when the child was approximately three months old. Father's paternity was established and the parties entered into a parenting agreement, whereby mother was designated the residential parent and legal custodian. Father agreed to pay child support and was given visitation rights. The only issue remaining concerned the designation of the surname of the child, who, upon birth, had received mother's surname.[1]
 {¶ 4} The following facts were adduced during the July 23, 2007 hearing before the magistrate. Mother and father were involved in a month-long relationship, during which the child was conceived. Mother testified that she was uncertain of the paternity of the child and, thus, did not involve father with any aspect of her pregnancy or the child's birth, did not designate father on the birth certificate, and did not consult father prior to naming the child. Mother and the child's half-brother, who both live with the child, have mother's maiden name as their surname. Mother testified that the child's birth certificate, social security card, medical records, consisting of three separate hospitals, health insurance, life insurance and day care all reference the child under mother's maiden name. Mother also testified that the child will attend the same school system as his half-brother. In the child's hometown, there are numerous family members with mother's maiden name, including, a great grandmother, grandparents, an aunt, an uncle, and two *Page 3 
cousins, all of whom spend significant time with the child. Mother expressed concern that other children would comment on the child having a different last name than his half-brother.
 {¶ 5} Father testified that he has three daughters from a previous marriage, all of whom share his surname. The daughters live in Michigan, approximately three hours from father, but father testified that he has them regularly for visitation and that they have a relationship with the child. Other than his daughters, only father's parents share father's surname. Father's cousins and half-brother do not have father's surname. Father did not establish where his parents reside. Father testified that it is his desire to have the child bear his surname because he has no other son to carry on the family's name. Father stated that he did not know whether it would be good or bad for the child to maintain the same last name as the child's brother, with whom the child lives. Father testified that his relationship with the child would not be adversely affected if the child did not share his surname.
 {¶ 6} On August 10, 2007, the magistrate granted father's request for the child's name change. The magistrate made the following findings of fact:
 {¶ 7} "1. [Father's] testimony regarding [mother's] refusal to allow him to participate in her pre-natal care is deemed to be credible.
 {¶ 8} "2. [Father's] testimony regarding the amount of time and circumstances under which he was allowed visitation is deemed to be credible. *Page 4 
 {¶ 9} "3. Neither party's testimony regarding the amount of `support' [father] provided is deemed to be credible as each is found to be self-serving."
 {¶ 10} The magistrate then cited the factors to be considered in determining the best interest of the child, concerning the surname to be used, when parents who have never married contest a surname. SeeBobo v. Jewell (1988), 38 Ohio St.3d 330, paragraph two of the syllabus. The magistrate noted the following: the child was less than three months old when father filed his complaint requesting the name change; there would be no impact on father's relationship with the child, regardless of a name change; the child was not of an age where he had established identification as part of a family unit; despite mother's concerns regarding her sons having the same last name in school, mother acknowledged that there are many households where children have different last names; the child was not old enough to express an opinion; the child "would carry on [father's] surname which may die out if his name is not changed"; and both parties have extended family in the area. Based on the foregoing, the magistrate held that changing the child's name would be in his best interest. The magistrate then additionally stated:
 {¶ 11} "Specifically, [father] was precluded from participating in the pre-natal portion of the pregnancy, had no say in the child's name and was not listed on the birth certificate, as [mother] was not certain he was the father.
 {¶ 12} "Further, he had to file a paternity action to get relief. Finally, that this matter was dragged out for almost ten months after it was filed through no fault of *Page 5 
[father]. To argue now that the child is `known' as [mother's surname] as the basis for opposing the name change defies logic."
 {¶ 13} Mother objected to the magistrate's decision. On February 7, 2008, the juvenile court overruled mother's objections and affirmed the magistrate's decision. The juvenile court held that it completed a de novo review of the magistrate's decision and concluded that there was sufficient evidence upon which the magistrate could rely in finding that it was in the child's best interest to have his name changed.
 {¶ 14} Mother argues that it is against the manifest weight of the evidence to change the child's surname. Specifically, mother contends that the trial court overlooked the embarrassment, discomfort, or inconvenience that the child would face by having a different name than that of his custodial parent. Further, mother argues that the juvenile court weighed too heavily the consideration that father's last name may die out if the child's surname was not changed. Finally, mother argues that father did not meet his burden of proof that a name change would be in the child's best interest.
 {¶ 15} When reviewing a decision that a child's name should be changed, a reviewing court is not free to substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135. The determination of what is in the best interest of the child is within the sound discretion of the trial court. An abuse of discretion involves more than an error of judgment. It is an attitude on the part of the court that is unreasonable, unconscionable or arbitrary. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. *Page 6 
 {¶ 16} The Ohio Supreme Court in Bobo, 38 Ohio St.3d 330, held that a court of common pleas may determine the surname by which the child shall be known upon a showing that the name determination is in the best interest of the child. Bobo at paragraph one of the syllabus. This court has previously held that Bobo "clearly requires a showing on the part of the movant that the name change is in the child's best interest."Erin C v. Christopher R. (1998), 129 Ohio App.3d 290, 293.
 {¶ 17} The following factors should be considered by the court when determining the best interest of the child concerning the surname to be used when parents who have never been married contest a surname: "the length of time that the child has used a surname, the effect of a name change on the father-child relationship and on the mother-child relationship, the identification of the child as part of a family unit, the embarrassment, discomfort or inconvenience that may result when a child bears a surname different from the custodial parent's, the preference of the child if the child is of an age and maturity to express a meaningful preference and any other factor relevant to the child's best interest. Courts should consider only those factors present in the particular circumstances of each case." Bobo at paragraph two of the syllabus. The factors to be considered, however, are suggestive and "the list is neither exhaustive nor is consideration of each mandatory."In the Matter of the Name Change of Armin Lawrence R., Jr., 6th Dist. No. L-06-1236, 2007-Ohio-1523, ¶ 12, citing In re Willhite (1999),85 Ohio St.3d 28.[2] *Page 7 
 {¶ 18} In Bobo, a complaint to determine parentage was filed by the father when the child was approximately three months old. The parents were never married, the father was not listed on the birth certificate, and the child was given the mother's surname. The father testified that the mother had not asked him to sign the child's birth certificate, which would have allowed the child to receive the father's surname if the mother had agreed, and that he "felt strongly about having the child's name changed" to his surname. Bobo at 331. The trial court changed the child's surname to that of the father's because it was "customary" to do so.
 {¶ 19} In reversing the trial court, the Ohio Supreme Court cautioned that courts should "refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname," noting that the mother has an equal interest in having the child bear the maternal surname. Id. at 334. See, also, In re Willhite (1999), 85 Ohio St.3d 28,32. As such, this court has previously held that it is an abuse of discretion for the trial court to order a name change when "the only evidence in support of the name change consisted of appellee's statement at the hearing that he wanted his son to have his surname." Erin C. v.Christopher R. (1998), 129 Ohio App.3d 290, 293.
 {¶ 20} The Ohio Supreme Court has also held that equally important in determining the best interest of the child during a name change dispute is the mother's desire "to avoid the confusion so prevalent with having a mother and child in the same *Page 8 
household with two different surnames." Willhite, 85 Ohio St.3d at 32. Likewise, this court has previously held when a child strongly identified with the mother's family unit and could suffer embarrassment by not sharing a surname with his custodial parent, the trial court abused its discretion in ordering the child's surname to be changed to the father's. Scott D. v. Tricia W. (Feb. 6, 1998), 6th Dist. No. E-97-106. In Scott D., this court held that keeping the mother's surname was in the child's best interest even though the father argued that the mother could remarry and change her name, that it was "morally right," and that if his son did not have his surname, his relationship with his son may be adversely affected.
 {¶ 21} This court has also previously held that "one parent's alleged misbehavior during lengthy and acrimonious paternity and custody proceedings" is not the kind of criteria the court in Bobo contemplated as an "other factor." Donna B. v. Kraig M. (Oct. 23, 1998), 6th Dist. No. WM-98-010. As such, we find that the juvenile court in this case erred by weighing the child's best interest on factors concerning the mother's behavior, such as, prohibiting father from participating during her pregnancy or when naming the child, and disputing father's request to change the child's name in a lengthy paternity suit. These are not factors that weigh in the determination of the child's best interest during a name change dispute.
 {¶ 22} Accordingly, after a thorough examination of the record in this case, we find that the only evidence in support of the name change consisted of father's statement at the hearing that he wanted his son to have his surname, that the child has three half-sisters *Page 9 
who live three hours away, and that his paternal grandparents are living. To the contrary, the child lives with his mother and half-brother, who both bear mother's maiden surname, will attend the same school system as his half-brother and could suffer embarrassment from not having the same name as his custodial mother, is babysat weekly at his maternal grandmother's with his cousins, who also have mother's surname, has been established under his mother's surname at area doctor's offices and hospitals, and has numerous extended family members in Sandusky, Ohio, who have mother's surname. Based on the foregoing, we find that father did not meet his burden in establishing that a name change was in the child's best interest. We therefore find that the trial court abused its discretion in ordering the child's name to be changed to that of father's. Mother's sole assignment of error is found well-taken.
 {¶ 23} The judgment of the Erie County Court of Common Pleas, Juvenile Division, is reversed. Pursuant to App. R. 12(B) this court hereby enters the judgment that should have been entered by the trial court and deny appellee's request to change his son's surname. Appellee is ordered to pay costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
 JUDGMENT REVERSED. *Page 10 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J. Concur.
[1] Mother has never been married and her maiden name remains her surname.
[2] Although Willhite concerned a name change in a probate action, rather than juvenile court, the factors and applicable rationale are the same. *Page 1